# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### June 7, 2016 Session

## STATE OF TENNESSEE v. ROBERT BUTLER

**Appeal from the Criminal Court for Shelby County**
**Nos. 13-06084, 13-06085     James M. Lammey, Jr., Judge**

---

### No. W2015-01720-CCA-R3-CD  -  Filed September 9, 2016

---

In consolidated cases, the defendant, Robert Butler, was convicted by a Shelby County Criminal Court jury of two counts of aggravated burglary, Class C felonies; theft of property valued at $1000 or more but less than $10,000, a Class D felony; and theft of property valued at $500 or less, a Class A misdemeanor.  He was sentenced to ten years for each aggravated burglary conviction, six years for the theft of property valued at $1000 or more conviction, and eleven months and twenty-nine days for the theft of property valued at $500 or less conviction.  The court ordered partial consecutive sentencing and imposed an effective term of twenty years in the Department of Correction.  On appeal, the defendant argues that the trial court erred in allowing testimony from a State's witness that contained information from his statement in another case pending against him and that the court erred in sentencing.  After review, we affirm the judgments of the trial court but remand for entry of corrected judgments in Counts 1 and 2 of Case No. 13-06085 to check the box indicating that the defendant was found guilty in those counts.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded for Entry of Corrected Judgments**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

James Jones, Jr. (on appeal and at trial); and Carlissa Shaw (at trial), Memphis, Tennessee, for the appellant, Robert Butler.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Ann Schiller, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

The defendant was indicted in case number 13-06084 for aggravated burglary and theft of property valued at $1000 or more but less than $10,000. In case number 13-06085, the defendant was indicted for aggravated burglary and theft of property valued at $500 or less. The cases were consolidated for trial because they involved the same victim, and evidence of both crimes would be required to convict the defendant of each crime if tried separately.

At trial, Latrice Doitch, the victim, testified that in July 2013, she was living in an apartment on Camelot Lane with her son, daughter, and boyfriend. She moved into the apartment approximately one month before the burglaries. On July 2, the victim left her apartment by 7:00 a.m. and her boyfriend left by 8:30 a.m. Her children were out of town. When she got home around 3:30 p.m., she noticed that the window next to her front door was broken, the door was open, and several items of property were missing. The stolen items included a thirty-two-inch television worth $200, a Nintendo Wii gaming system worth $50, an Xbox Connect gaming system worth $200, a projector worth $250, a car radio worth $200, a rifle worth $150, a video camera worth $40, and $200 cash. The victim called the police and reported the burglary. The police investigated and dusted for fingerprints but did not find anything to identify the burglar.

The next day, the victim's apartment was burglarized again, between the same hours while she and her boyfriend were at work. The window on the other side of her door had been broken, and a DVD player had been stolen. Four or five pairs of Levi's jeans belonging to her teenage son were also taken. The victim had recently purchased the jeans and they were "special" in that they were different colors and long enough to fit her son's tall height. The DVD player was worth $20, and the jeans were worth $50 a pair. The police investigated but again failed to find anything that could identify the burglar.

After the police left, the victim walked to her mailbox and saw the defendant standing on a balcony across the way and asked if he had seen anyone breaking into her apartment. The defendant said that he had not. She noticed that the defendant, who was shorter than her son, was wearing green, Levi's jeans that were too long for him. The victim returned to her apartment and told her boyfriend that she thought she had seen someone wearing her son's jeans. Her boyfriend responded that anyone could have green jeans. She did not tell the police that she saw the defendant wearing her son's jeans because the officers had already left. However, a couple of weeks later, the victim

2

mentioned the incident to a police officer who stopped by for her to identify some of the recovered stolen property, but she did not know the defendant's name or where he lived. The victim learned that the items had been pawned and that was how they were located. Later, at the preliminary hearing, the victim recognized the defendant as the person who had been wearing her son's jeans and told the prosecutor about it as soon as she had the opportunity. The victim said that she had never heard of anyone called "Black Rico."

Officer Antoine Smith with the Memphis Police Department testified that he responded to the July 2 burglary call. He took a report of the missing items and dusted for fingerprints. The information was sent to his supervisors and thus concluded his involvement in the case.

Officer Conner Macbeth with the Memphis Police Department testified that he responded to the July 3 burglary call. He took an incident report and listed the property that had been taken. The information was sent to the appropriate investigation unit and thus concluded his involvement in the case.

Shirod Cousin, the store manager of Cash America, testified that a pawn ticket revealed that the defendant pawned a thirty-two-inch television at 12:03 p.m. on July 2, 2013. Records also revealed that the defendant sold Cash America a DVD player on July 6, 2013, at 12:59 p.m. Both items were determined to be items stolen from the victim.

Officer Cynthia Jones with the Memphis Police Department was assigned to investigate the two burglaries. The victim provided serial numbers for some of the stolen items, and those numbers were entered into a pawnshop database, which confirmed that some of the victim's items had been pawned. The defendant had pawned the television and DVD player, and a man named Richard Anderson had pawned the Wii gaming system.

Officer Jones testified that the defendant was brought in for questioning on August 2, 2013, and voluntarily gave statements. In his statements, the defendant denied committing the burglaries and told Officer Jones that an individual named "Black Rico" had asked him to pawn the items. He said that "Black Rico" was moving and needed the defendant's help because he did not have proper identification. The defendant could not provide an address or proper name for "Black Rico" or the type of car he drove. The defendant also told the police that he helped "Black Rico" pawn more items a few weeks later even after he learned that "Black Rico" was driving a stolen car. Officer Jones noted that a fingerprint lifted from one of the pawn cards matched the defendant. After receiving the statements from the defendant, he was charged with the burglaries.

Richard Anderson testified that he grew up with the defendant and had known him for many years. On July 2, 2013, Mr. Anderson pawned a Nintendo Wii gaming system at 12:54 p.m. at Easy Pawn, a pawnshop across the street from Cash America. He was arrested sometime later and learned that the gaming system had been stolen in a burglary. He explained that the defendant had given him the gaming system to pawn for gas money in exchange for driving the defendant to Cash America. Mr. Anderson pawned the gaming system at Easy Pawn because he thought that shop would pay more than Cash America. Mr. Anderson said that he had never heard of anyone called "Black Rico."

Following the conclusion of the proof, the jury convicted the defendant, as charged, of aggravated burglary and theft of property valued at $1000 or more but less than $10,000 in case number 13-06084, and aggravated burglary and theft of property valued at $500 or less in case number 13-06085. The trial court conducted a sentencing hearing, after which it sentenced the defendant to ten years for each aggravated burglary conviction, six years for the theft of property valued at $1000 or more but less than $10,000 conviction, and eleven months and twenty-nine days for the theft of property valued at $500 or less conviction. The court ordered that counts one and two of each indictment run concurrently to each other but that the effective sentence in case number 13-06084 run consecutively to the effective sentence in case number 13-06085, for a total effective term of twenty years.

## ANALYSIS

### I. Introduction of Evidence

The defendant first argues that the trial court erred in allowing testimony from a State's witness, Officer Cynthia Jones, that contained information from his statement in another case pending against him.

The defendant was indicted for four separate aggravated burglaries that spanned a month's time – June 28, July 2, July 3, and July 23. The July 2 and 3 burglaries were tried together as they involved the same victim. However, the police interviewed the defendant about all four cases at once, and he gave statements in all four cases at that time, apparently placing the blame on "Black Rico." At the present trial, the State's witnesses were advised to not make reference to the other two burglaries.

During Officer Jones's testimony on direct examination, the State questioned her about the dearth of information received from the defendant about "Black Rico." Officer Jones stated: "He said he didn't know Black Rico's real name. He didn't [k]now how to contact him. He didn't know where he lived. As a matter of fact, I think he said that he thought Black Rico was moving or something; but he could provide me no information

on Black Rico." As later revealed in a bench conference, by referring to "Black Rico" moving, Officer Jones inadvertently made reference to something the defendant said in his statement regarding the fourth burglary that had occurred three weeks after the burglaries of the victim's apartment. Recognizing the mistake, the prosecutor avoided any mention of "Black Rico" moving.

Defense counsel did not object when the statement was made, ask the court for guidance, or simply ignore the statement. Instead, on cross-examination, defense counsel questioned Officer Jones at considerable length about the assertion that "Black Rico" was moving, insinuating that the defendant was just trying to help someone who was moving and that the police should have focused on finding "Black Rico."

After defense counsel's cross-examination, the State argued that the defense had "opened the door" and asked the court for permission to explain the context of the defendant's statement that "Black Rico" was moving; specifically, that when he said "Black Rico" was moving, the defendant also said that "Black Rico" asked him to drive to the pawnshop because "Black Rico" was driving a stolen car. The State averred that it would do so without mentioning anything about the other burglaries or pending charges. The trial court reviewed all of the defendant's statements, defense counsel's cross-examination of Officer Jones, and the arguments of counsel and concluded that the defendant had opened the door and the State could present the limited testimony. The court also analyzed the proposed evidence under Tennessee Rule of Evidence 404(b) and concluded that the prejudicial effect did not outweigh its probative value. Defense counsel asked if he could introduce evidence that the incident for which the defendant said that "Black Rico" was driving a stolen car occurred three weeks after the burglaries of the victim's apartment. The trial court said that defense counsel could but cautioned that doing so would open the door to evidence that the defendant still agreed to pawn items for "Black Rico" even after learning that he was driving a stolen car.

On redirect examination, the State elicited testimony that the defendant told Officer Jones that "Black Rico" needed the defendant to drive because "Black Rico's" car was "hot." On recross-examination, defense counsel elicited testimony that the defendant made that statement three weeks after the burglaries of the victim's apartment, and that the defendant never said he knew "Black Rico's" car was "hot" at the time he pawned the victim's property. On further redirect, the State then elicited testimony that the defendant admitted he continued to pawn items for "Black Rico" even after he learned "Black Rico" was driving a stolen car.

We initially note that the defendant failed to include any of the four statements in the record on appeal, including the two statements that were admitted as exhibits at trial,

5

and has arguably waived review of this issue. Even if not waived, however, the defendant is not entitled to relief.

In considering this issue, we apply the rule that "admission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion." State v. Robinson, 146 S.W.3d 469, 490 (Tenn. 2004); see State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). A trial court's exercise of discretion will only be reversed on appeal if the court "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Robinson, 146 S.W.3d at 490 (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

When determining admissibility, a trial court must first decide if the evidence is relevant. Tenn. R. Evid. 402 ("All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible."); Robinson, 146 S.W.3d at 490. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. In addition, the doctrine of curative admissibility "permits the State, on redirect, to question the witness to clarify or explain the matters brought out during, or to remove or correct unfavorable inferences left by, the previous cross-examination." State v. Land, 34 S.W.3d 516, 531 (Tenn. Crim. App. 2000) (citing People v. Manning, 695 N.E.2d 423, 433 (Ill. 1998)). The doctrine allows the State to present otherwise inadmissible evidence "in order to explain or counteract a negative inference" created when a defendant has injected an issue into the case. Id. (citations omitted). The doctrine is designed to guarantee fairness in that it prevents a party from using the Rules of Evidence to gain exclusion of certain evidence and then "extracting selected pieces of this evidence for his own advantage, without the Government being able to place them in their proper context." Id. (quoting Lampkins v. United States, 515 A.2d 428, 431 (D.C. 1986)).

In Land, the State was prohibited from introducing a police officer's statement that the defendant's mother had told the officer that the defendant had stolen her car. Id. at 530. On cross-examination, defense counsel repeatedly questioned the officer regarding the State's proof of intent to support a charge of theft of the vehicle, knowing that the officer could not refer to his telephone conversation with the defendant's mother, the substance of which was the proof supporting the theft charge. Id. In light of the cross-examination, the court determined that defense counsel's cross-examination had "opened the door" for the State to elicit testimony about what the defendant's mother had told the police officer. Id.

6

Similarly to Land, defense counsel in this case extracted selected favorable portions of the defendant's statements to the police, while relying on the State's inability to put those statements in proper context. The trial court allowed the State to introduce limited evidence to put the defendant's statements in context – that the defendant continued to pawn items for "Black Rico" even after learning that "Black Rico" was driving a stolen car. The trial court did not abuse its discretion in allowing this limited questioning by the State.

As noted by the trial court during the bench conference, admission of this evidence also brings Rule 404(b) considerations into play. Tennessee Rule of Evidence 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Such evidence, may, however, be admitted for other purposes if the following conditions are met prior to admission of this type of proof:

> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
>
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
>
> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). "Other purposes" has been defined to include the defendant's motive, intent, guilty knowledge, identity, absence of mistake or accident, a common scheme or plan, completion of the story, opportunity, and preparation. See State v. Berry, 141 S.W.3d 549, 582 (Tenn. 2004). Where the trial judge has substantially complied with procedural requirements, the standard of review for the admission of bad act evidence is abuse of discretion. DuBose, 953 S.W.2d at 652.

The trial court conducted a 404(b) hearing and determined that the evidence went to material issues of the defendant's intent and guilty knowledge. It determined that the evidence was particularly probative in light of the defendant's cross-examination of Officer Jones and the theory that he only pawned the items when helping "Black Rico"

7

move. The court determined that the "bad act," the defendant's "guilty knowledge" in continuing to pawn items for an individual he knew was driving a stolen car, was established by clear and convincing evidence because the defendant himself admitted it. The court lastly determined that the danger of unfair prejudice did not outweigh the probative value of the evidence because the "bad act" was not especially incriminating and because the State would not introduce evidence that the later-pawned items actually came from another burglary. We discern no abuse of discretion in the trial court's determination.

The defendant's contentions that the trial court abused its discretion in admitting the evidence under Rule 404(b) are without merit. First, he asserts that the State did not give notice of its intent to introduce the evidence. However, the State could not have given advance notice because it did not intend to use the evidence until after the defendant put it at issue during his cross-examination of Officer Jones. Second, he asserts that the bad acts were not "prior," as they occurred after the burglaries of the victim's apartment. However, the relevant evidentiary rule speaks to "*other* crimes, wrongs, or acts," not "*prior*" bad acts. Finally, the defendant argues that the evidence was unfairly prejudicial. However, the trial court properly analyzed the issue, and we uphold its determination.

We conclude that the defendant's arguments as to why the trial court erred in allowing this questioning are without merit.

## II. Sentencing

The defendant also argues that the trial court erred in sentencing him. He asserts that the court erred in imposing maximum[1] sentences in his range despite no applicable enhancement factors and in imposing consecutive sentences without finding justifiable grounds for doing so.

Under the 2005 amendments to the sentencing act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;

---

[1] The trial court actually did not impose a maximum sentence for the theft of property valued at $1000 or more but less than $10,000 conviction, as the possible Range II sentence for the offense was four to eight years and he received a sentence of six years. See Tenn. Code Ann. § 40-35-112(b)(4).

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2012).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and the sentencing decision of the trial court will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." State v. Bise, 380 S.W.3d 682, 709-10 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.

In determining the length of the defendant's sentences, the trial court noted that the defendant had a previous history of criminal convictions in addition to that necessary to establish the range, Tenn. Code Ann. § 40-35-114(1), in that he only needed two prior felonies to be considered Range II and the defendant had four prior felonies. The court observed that the defendant had reported cocaine and marijuana use as an adult, which was considered prior criminal behavior. The only mitigation the court observed was that the defendant had completed a number of programs while in custody. However, the court also noted that, even though not an aggravating circumstance, the defendant had not received his GED. The court observed that there was no indication that the defendant was employed at the time of the burglaries and appeared to "use[] his criminal activity as a livelihood." It noted that the defendant had a violent nature in that he had previously been convicted of an offense involving use of a deadly weapon and also a crime

9

involving dishonesty. The court found it to be particularly atrocious that the defendant burglarized the victim's home on two consecutive days. Taking everything into consideration, the court imposed sentences of ten years on the aggravated burglary convictions, six years on the theft of property valued at $1000 or more but less than $10,000 conviction, and eleven months and twenty-nine days on the theft of property valued at $500 or less conviction.

The record reflects that the trial court properly considered the enhancement and mitigating factors, imposed a sentence within the applicable range for the defendant's offenses, and made the requisite findings in support of its ruling. Accordingly, we affirm the sentences imposed by the trial court.

In addition, the trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that any one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) apply, including the one the trial court found applicable in this case – that the defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood. Tenn. Code Ann. § 40-35-115(b)(1). We review the trial court's consecutive sentencing determinations for an abuse of discretion, with a presumption of reasonableness afforded to the trial court's decision. See State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013) (applying same deferential standard announced in Bise, 380 S.W.3d 682 to the trial court's consecutive sentencing decisions).

In imposing partial consecutive sentences, the court found:

[The defendant] appears to be a professional criminal whose knowingly devoted his life to criminal acts as a major source of livelihood. That's what he is. He's a thief. He's a criminal. And since the age of twenty, that's all he's done. He's never . . . contributed one iota to society ever. There's nothing that we can point to that he's contributed to society at all.

The court noted that the defendant was a twenty-nine-year-old high school dropout who had been in jail for more than five of the previous nine years, had been convicted of four prior felonies, was caught pawning stolen property, had not tried to obtain a GED since 2010, and had presented no proof of any employment. This is sufficient evidence to support the court's finding.

The defendant asserts that his partial consecutive sentences are improper because the court did not review the factors set out in State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995). However, the court is only required to utilize the Wilkerson factors if

10

consecutive sentencing is based on a finding that the defendant is a dangerous offender.[2] See Pollard, 432 S.W.3d at 863. The court considered the dangerous offender classification but concluded "it [was] a stretch." The defendant also argues that the court imposed consecutive sentences based on its concern about the defendant's release eligibility. The court did comment on the defendant's release eligibility date, but it was in the context of whether consecutive sentences would reasonably relate to the seriousness of the offenses, which is pertinent to the Wilkerson factors.

We discern no abuse of discretion in the trial court's imposition of partial consecutive sentences based on a finding that the defendant is a professional criminal.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court but remand for entry of corrected judgments in Counts 1 and 2 of Case No. 13-06085 to check the box indicating that the defendant was found guilty in those counts.

_____
ALAN E. GLENN, JUDGE

---

[2] When the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it must also find that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); Wilkerson, 905 S.W.2d at 937-38.

11